# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 20, 2010          Decided June 28, 2011

No. 09-3132

UNITED STATES OF AMERICA,
APPELLEE

v.

DANNIE JONES, ALSO KNOWN AS SMILEY,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cr-00118)

*Gregory Stuart Smith*, appointed by the court, argued the cause and filed the briefs for appellant.

*Stephanie C. Brenowitz*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Roy W. McLeese III*, *Elizabeth Trosman, Darlene M. Soltys, John K. Han*, and *B. Patrick Costello*, Assistant U.S. Attorneys.

Before: TATEL, GARLAND, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*:  Dannie Jones pled guilty to conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin.  Although Jones faced a mandatory life sentence if he went to trial and lost, his plea agreement provided for a sentence of sixty months.  Before he was sentenced, however, Jones moved to withdraw his guilty plea, maintaining that he had not understood that he was pleading guilty to conspiracy.  The district court denied the motion and sentenced Jones to the agreed-upon term.  On appeal, Jones contends that the district court abused its discretion both in denying his motion and in failing to order a competency hearing before doing so.  We reject these contentions and affirm the judgment of the district court.

I

On October 23, 2008, a grand jury charged Jones and seven co-defendants with a variety of drug trafficking offenses.  Jones was included in two counts of the 39-count indictment:  Count One, which charged each defendant with conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A)(i); and Count 38, which charged Jones with distributing heroin on a specific date (February 15, 2008), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C).  If convicted, Jones faced a mandatory statutory sentence of life in prison in light of his prior drug trafficking convictions. Initial Sentencing Hr'g Tr. 6-7 (Mar. 18, 2009).

The government's theory was that Jones was a street-level dealer in a drug operation run by Rex Pelote and Edward Farley, who conspired with Jones and numerous others to distribute heroin in the area of Langston Terrace in the District of Columbia.  According to the government's proffers to the district court: Pelote would purchase the heroin wholesale; a co-

conspirator named Shannon would divide it into $10 ziplock bags; Pelote, Shannon, and Farley would allocate it to street dealers; the street dealers, including Jones, would distribute it; and Shannon would then collect the proceeds from the dealers for delivery to Pelote. *See* Plea Hr'g Tr. 14, 33-34, 61-62 (Jan. 6, 2009). As part of the government's investigation: an undercover officer bought heroin from Jones in Langston Terrace on February 15, 2008; officers videotaped Jones conducting other drug transactions in the area with several of the co-conspirators; government wiretaps intercepted telephone conversations in which Farley discussed how many ziplocks to give Jones and how much Jones still owed for prior sales; additional wiretaps captured Jones calling Farley to advise him that customers were out seeking drugs; and still other wiretaps captured Jones warning Farley that police were in the area. *See id.* at 61-62; Initial Sentencing Hr'g Tr. 8-10 (Mar. 18, 2009); Status Hr'g Tr. 5-6 (Aug. 10, 2009).

On January 6, 2009, the day the trial was set to begin, Jones and two co-defendants entered guilty pleas. Jones, represented by appointed counsel, pled guilty to a lesser-included offense of Count One of the indictment -- conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B)(i) -- with an agreed-upon sentence of sixty months' imprisonment under Federal Rule of Criminal Procedure 11(c)(1)(C).[1] Prior to entering the plea, Jones had signed the government's factual proffer, acknowledging that it was true. App. 32-36. Referring to the proffer, the court confirmed with Jones that: he "worked

---

[1]Rule 11(c)(1)(C) provides that a plea agreement may specify that the government will "agree that a specific sentence . . . is the appropriate disposition of the case." FED. R. CRIM. P. 11(c)(1)(C). "[S]uch a recommendation . . . binds the court once the court accepts the plea agreement." *Id*.

with Rex Pelote and Edward Farley and others to sell heroin in Langston Terrace"; he was "doing hand-to-hand heroin sales on the street"; although he was "getting the heroin that [he was] selling from someone named Shannon, [he] knew that Shannon was getting it from Rex Pelote"; and, he "would get the money from the sales[,] would give the money back to Shannon, and . . . knew that Shannon would get the money back to Pelote." Plea Hr'g Tr. 33-34 (Jan. 6, 2009).

On March 18, 2009, at what was to have been his sentencing hearing, Jones moved to withdraw his plea. He told the judge that he had thought he "was taking a plea to possession of -- distributing heroin, not conspiracy." Initial Sentencing Hr'g Tr. 10 (Mar. 18, 2009). "What I have here is one sale," he said. "I admit to selling that, but it was less than 100 grams . . . less than . . . half a gram of heroin." *Id*. at 9-10 He did not, he said, want "to take a cop to 100 grams." *Id*. at 10. Jones' counsel advised the court that Jones had "refused to discuss the situation" the last three times counsel had gone to see him, and for that reason counsel had filed a motion to withdraw from the representation. *Id*. The court then granted counsel's motion, continued the defendant's sentencing, and subsequently appointed new counsel.

Jones' new counsel appeared with him for a status hearing on May 8, 2009. Counsel reported that Jones had refused to talk to her as well. In response to a question from the court regarding the status of the guilty plea, Jones again said that he "thought [he] was pleading guilty to my sales that they said I had made, not to no conspiracy, not to no 100 grams." Status Hr'g Tr. 2 (May 8, 2009). He told the court that he did not want his new attorney, and that he would seek to retain a lawyer or possibly represent himself. The court noted that Jones was refusing to cooperate with a psychologist the court had asked to

screen him, and postponed the sentencing to allow Jones to obtain counsel.

The court held two more status hearings before conducting Jones' sentencing. At the first hearing, the court explained that Jones had requested another appointed counsel because he had been unable to retain one on his own. Jones told the court that he still wanted to withdraw his plea, and the court appointed a third lawyer for him. Status Hr'g Tr. 2-4 (Aug. 10, 2009). At the second and final status hearing, Jones' newly appointed counsel reported that Jones had refused to see him when he twice visited Jones at the jail. The court told Jones that it was not inclined to grant his motion to withdraw his guilty plea and that sentencing would proceed the next day. The court observed that there was "nothing incompetent" about Jones; he was just being "obstinate." Status Hr'g Tr. 7 (Nov. 23, 2009).

Jones' sentencing hearing took place on November 24, 2009. The court stated for the record that Jones was going to represent himself, but that the last attorney the court had appointed was present to serve as stand-by counsel if Jones chose to consult him.

The court first addressed the question of Jones' competency. It noted that Jones' second attorney had suggested that Jones was incompetent and had asked the court to order a psychological screening. The court had just received the report from the psychologist, who advised that Jones had refused to cooperate, telling her: "I won't take the exam. I know what I'm doing. I'll see the judge in court." Sentencing Hr'g Tr. 4 (Nov. 24, 2009). Although the psychologist recommended that Jones be sent to an inpatient facility for a competency examination, the judge declined, saying: "I've been observing you in court on the several occasions you've been here . . . . I don't think there's

anything wrong with your head. I think you're perfectly competent." *Id*. at 5.

The court then proceeded to consider Jones' motion to withdraw his guilty plea. Jones again said that he had not understood he was pleading to a conspiracy, and that he just wanted to plead to the "10 ziplocks that I supposedly sold to the undercover police officer." *Id*. at 6-8. Jones admitted that he "bought them from Shannon" and that he knew Shannon got the bags from Farley. *Id*. at 8. Then, for the first time, he asserted that he bought the ziplocks for his own personal use, and that he "didn't sell no drugs to nobody." *Id*.

Applying the factors that this circuit has held relevant to motions to withdraw guilty pleas, the district court concluded that Jones did not proffer a "fair and just reason" to justify withdrawal of the guilty plea. *Id*. at 17. The court found that Jones did not present "a viable claim of innocence," that the government would be "considerably" -- although "maybe not horrendously" -- prejudiced by withdrawal, and that there was "no taint" in the colloquy the court had conducted when it took Jones' plea on January 6. *Id*. at 17-18.

Finally, the court proceeded to sentencing. Jones was given an opportunity to consult with stand-by counsel, which Jones agreed to do. After the consultation, counsel asked the court to impose the agreed-upon 60 months' incarceration. The court imposed the 60-month sentence, notwithstanding that the U.S. Sentencing Guidelines range for the offense to which Jones pled was 188-235 months.[2] This appeal followed.

---

[2] *See* Presentence Investigation Report ¶ 104; *supra* note 1.

II

Jones asserts that the district court committed two errors. First, he contends that the court erred in denying his motion to withdraw his guilty plea because he presented a "fair and just reason" for withdrawal. *See* FED. R. CRIM. P. 11(d)(2)(B). Second, he argues that, even if he did not present a fair and just reason, the court erred in denying the motion without first holding a competency hearing. We address these contentions below.[3]

A

Rule 11 of the Federal Rules of Criminal Procedure sets forth the requirements for judicial consideration and acceptance of guilty pleas, as well as for the withdrawal of such pleas. Rule 11(d) provides that a defendant may withdraw a guilty plea prior to sentencing if he "can show a fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11(d)(2)(B). "Although [w]ithdrawal of a guilty plea prior to sentencing is to be liberally granted, we review a district court's refusal to permit withdrawal only for abuse of discretion." *United States v. Curry*, 494 F.3d 1124, 1128 (D.C. Cir. 2007) (internal quotation marks and citations omitted); *see United States v.*

---

[3]Jones further contends that his sentencing counsel was ineffective in not asking the district court to recommend that he be placed in the Bureau of Prisons' Residential Drug Abuse Program. This claim is raised for the first time on appeal, and it is "'this court's general practice . . . to remand [such a] claim for an evidentiary hearing unless the trial record alone conclusively shows that the defendant either is or is not entitled to relief.'" *United States v. Shabban*, 612 F.3d 693, 697-98 (D.C. Cir. 2010) (quoting *United States v. Rashad*, 331 F.3d 908, 909-10 (D.C. Cir. 2003)). As the trial record does not resolve the issue, we remand so that the district court may address it in the first instance.

*Hanson*, 339 F.3d 983, 988 (D.C. Cir. 2003). Reversal is "uncommon." *United States v. Shah*, 453 F.3d 520, 522 (D.C. Cir. 2006) (quoting *United States v. Loughery*, 908 F.2d 1014, 1017 (D.C. Cir. 1990)).

In reviewing a district court's refusal to permit withdrawal, this court considers three factors: "'(1) whether the defendant has asserted a viable claim of innocence; (2) whether the delay between the guilty plea and the motion to withdraw has substantially prejudiced the government's ability to prosecute the case; and (3) whether the guilty plea was somehow tainted.'" *Curry*, 494 F.3d at 1128 (quoting, inter alia, *United States v. McCoy*, 215 F.3d 102, 106 (D.C. Cir. 2000)). The third factor -- taint -- is the "most important," *United States v. Ford*, 993 F.2d 249, 251 (D.C. Cir. 1993), while the second -- prejudice -- "has never been dispositive in our cases," *Hanson*, 339 F.3d at 988. We will therefore re-order the factors and consider them in the order of their importance. *See United States v. Robinson*, 587 F.3d 1122, 1127 (D.C. Cir. 2009); *United States v. Cray*, 47 F.3d 1203, 1208 (D.C. Cir. 1995).

1. The gravamen of Jones' claim of taint is that he thought he was merely pleading guilty to a single sale of 10 ziplocks of heroin to an undercover officer, and that he did not understand that he was actually pleading guilty to a conspiracy involving 100 or more grams of the drug. It is hard to see how this could have been so.

The district court's first question to Jones at the plea hearing was whether he wanted to enter a plea of guilty to "conspiracy to distribute and possess with the intent to distribute 100 grams or more" of heroin. Plea Hr'g Tr. 22 (Jan. 6, 2009). Jones said: "Yes, I do." *Id*; *see also id.* at 32 (statement by the court that the guilty plea is to "conspiracy"). The court also asked whether Jones had read and understood his plea

agreement; Jones confirmed that he had, and that he had gone over it with his attorney. *Id*. at 23. The first line of that agreement, which Jones signed, states that Jones agreed to "enter a plea of guilty to **Conspiracy to Distribute and Possess with Intent to Distribute 100 grams or more**" of heroin. App. 37 (bolding in original). *See id.* at 38 (acknowledging that the defendant "is accountable for **at least 100 grams but less than 400 grams of heroin**" (bolding in original)). Finally, the court confirmed with Jones that he had "signed a piece of paper called a factual proffer in support of guilty plea." Plea Hr'g Tr. 32 (Jan. 6, 2009). The first line of that proffer likewise stated that Jones had agreed to enter a plea of guilty to "Conspiracy to Distribute and Possess with the Intent to Distribute 100 grams or more" of heroin. App. 32.

Nor is there room for an argument that the district court failed to sufficiently explain the meaning of the offense to which Jones was pleading. As Jones concedes, "the district judge did separately state that 'a conspiracy is an agreement between two or more people to violate the law,' and that 'the basic charge here . . . is that you were working together with other people in the heroin distribution business.'" Appellant's Reply Br. 4 (referencing Plea Hr'g Tr. 32 (Jan. 6, 2009)). Indeed, the court did more. Referring to the factual proffer, the court confirmed with Jones that: he "worked with Rex Pelote and Edward Farley and others to sell heroin in Langston Terrace"; he was "doing hand-to-hand heroin sales on the street"; although he was "getting the heroin that [he was] selling from someone named Shannon, [he] knew that Shannon was getting it from Rex Pelote"; and, he "would get the money from the sales[,] would give the money back to Shannon, and . . . knew that Shannon would get the money back to Pelote." Plea Hr'g Tr. 33-34 (Jan. 6, 2009). The factual proffer further advised Jones that "the essential elements" of the conspiracy offense to which he was pleading were: "1. That an agreement existed between two or

more persons to commit the crimes of distribution and possession with the intent to distribute a controlled substance; and 2. That the defendant intentionally joined in that agreement." App. 32 (citing *United States v. Lam Kwong Wah*, 924 F.2d 298, 302-03 (D.C. Cir. 1991); *United States v. Pumphrey*, 831 F.2d 307, 308-09 (D.C. Cir. 1987)). We detect no error in any of this, and no basis for believing that Jones failed to understand he was pleading guilty to a conspiracy involving 100 or more grams of heroin.

As this court has previously explained, "[i]f we determine that there was no error in the taking of the defendant's plea, we will be extremely reluctant to reverse the district court, even if the defendant makes out a legally cognizable defense to the charges against him." *Cray*, 47 F.3d at 1208; *accord Robinson*, 587 F.3d at 1131. "That is, a defendant who fails to show some error under Rule 11 has to shoulder an extremely heavy burden if he is ultimately to prevail." *Cray*, 47 F.3d at 1208; *accord Robinson*, 587 F.3d at 1131. Jones has shown no error, and we now turn to the remaining factors to determine whether he has met that burden.

2. Jones maintains that he asserted a viable claim of innocence in the district court. "To satisfy this standard, an appellant 'must do more than make a general denial in order to put the Government to its proof; he must affirmatively advance an objectively reasonable argument that he is innocent, for he has waived his right simply to try his luck before a jury.'" *Robinson*, 587 F.3d at 1131 (quoting *Curry*, 494 F.3d at 1129 (quoting *Cray*, 47 F.3d at 1209)).

The district court found that Jones did not advance a viable claim, given his previous admissions that he sold drugs he bought from Shannon and that he knew the drugs had come from the alleged co-conspirators. Sentencing Hr'g Tr. 8 (Nov. 24,

2009). The court indicated that Jones had thus admitted an "ongoing business relationship" that constituted a conspiracy. *Id.* Indeed, the proffer and admissions we described in the previous section were more than sufficient to establish Jones' on-going participation in the conspiracy. His "'general denial'" of the offense without a denial of the behavior constituting the offense was "insufficient to satisfy the [second] factor." *Curry*, 494 F.3d at 1129 (quoting *Cray*, 47 F.3d at 1209); *see Robinson*, 587 F.3d at 1131-32.

On appeal, Jones does not dispute that such an ongoing relationship would vitiate a claim of innocence. Appellant's Br. 22. Nor does he dispute that he sold drugs to the undercover agent on February 15, 2008. *Id.* Rather, he claims "that his ongoing business relationship involved his buying of drugs from Shannon for his own use, not selling." *Id.* And he denies that he sold to anyone "else beyond this one February 15, 2008 sale to an undercover officer." Appellant's Br. 22-23.

But this is not quite what Jones told the district court, and we cannot regard that court as having abused its discretion in rejecting a claim not made to it. On March 18, the first time Jones suggested that he wanted to withdraw his plea, he "admit[ted] to selling" heroin to the undercover officer, but said that was just "one sale." Initial Sentencing Hr'g Tr. 9-10 (Mar. 18, 2009). He did not say anything about his buying from Shannon only for personal use until the November 24 hearing. And contrary to his contention on appeal, Jones' claim there was not that the 10-ziplocks sale to the undercover police officer was the only sale he had ever made. Rather, he claimed that even the 10 ziplocks seized on February 15, 2008 contained drugs for his own personal use, and that he "didn't sell no drugs to nobody" at that or any other time. Sentencing Hr'g Tr. 8 (Nov. 24, 2009); *see id.* at 9. Far from acknowledging the sale, as he does on appeal and as he had previously done on March 18, he said

only that he would plead to the "10 ziplocks that I *supposedly* sold to the undercover police officer." *Id*. at 8 (emphasis added).

Accordingly, the innocence claim that Jones ultimately put to the district court was that he had never sold drugs to anyone. This claim was belied, of course, by the government's evidence. More important, it flatly contradicted Jones' prior admissions, made during both the January 6 plea colloquy and the March 18 hearing. A "motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." *Shah*, 453 F.3d at 523 (quoting *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005)). As Jones offered no explanation for the contradiction (and still offers none), the district court's conclusion that he failed to assert a viable claim of innocence was hardly an abuse of discretion. *See Curry*, 494 F.3d at 1129; *Hanson*, 339 F.3d at 988.

3. Finally, we consider whether the delay between Jones' guilty plea and his motion to withdraw substantially prejudiced the government's ability to prosecute the case. At the sentencing hearing, the government argued that it was prejudiced because by then it had "been about 10, 11 months," the cooperating witnesses had already been sentenced, and it would at that point be more difficult for the government to prosecute its case. Sentencing Hr'g Tr. 15 (Nov. 24, 2009). Although the court did not specify its rationale, it agreed that the government would be "considerably" -- although "maybe not horrendously" -- prejudiced by withdrawal. *Id*. at 17.

Jones notes that he first moved to withdraw his plea on March 18, 2009, only two-and-a-half months after he entered his plea, not ten or eleven. He argues, correctly, that the proper time frame for evaluating prejudice is generally the period

"between the plea 'and the motion to withdraw,'" Appellant's Br. 23 (quoting *Robinson*, 587 F.3d at 1126), rather than between the plea and the court's ruling on that motion. Here, however, the issue is clouded somewhat by the fact that Jones sought to discharge his first counsel at the same time he moved to withdraw his plea -- and then followed up by rejecting two more attorneys in succession -- thus rendering a swift ruling on his motion next to impossible. In addition, we have the government's representation that, even by the March 18 date, most of the co-defendants and cooperators had already been sentenced. Appellee's Br. 26-27 n.11.

Although it may nonetheless be true that we should downgrade the district court's perception of the prejudice the government suffered from "considerable" to "slight," we need not belabor the point because the degree of prejudice to the government has to date "never been dispositive in our cases." *Curry*, 494 F.3d at 1128 (quoting *Hanson*, 339 F.3d at 988); *see also Cray*, 47 F.3d at 1208; *United States v. Abreu*, 964 F.2d 16, 20 (D.C. Cir. 1992). Here, because we find no taint in the taking of Jones' plea, nor any unreasonableness in the district court's determination that Jones failed to assert a viable claim of innocence, we find no abuse of discretion in the court's denial of Jones' motion to withdraw his plea.

B

Jones' second contention is that, "[e]ven if [he] did not demonstrate a 'fair and just reason' sufficient to justify the withdrawal of his guilty plea . . . , the district court erred in denying his motion to withdraw his plea prior to" conducting a competency hearing. Appellant's Br. 26. A defendant has a right to a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to

the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a); *see United States v. Perez*, 603 F.3d 44, 47 (D.C. Cir. 2010). Prior to the date of the hearing, "the court *may* order that a psychiatric or psychological examination of the defendant be conducted." 18 U.S.C. § 4241(b) (emphasis added). This court "review[s] the district court's failure to hold a competency hearing under § 4241 for abuse of discretion." *Perez*, 603 F.3d at 47.

Jones argues that the district court should have held a competency hearing because both his former counsel and the court-appointed psychologist recommended that the court order a competency evaluation. As set forth in Part I above, at Jones' sentencing hearing the district court noted that Jones' second counsel had suggested that Jones was incompetent and had asked the court to order a psychological screening. The court stated that it had done so, and that it had received back from the psychologist a report advising that Jones refused to cooperate, saying only: "I won't take the exam. I know what I'm doing. I'll see the judge in court." Sentencing Hr'g Tr. 4 (Nov. 24, 2009). The psychologist recommended that Jones be sent to an inpatient facility for a competency evaluation, but the court declined, concluding from its own observations that Jones was "perfectly competent." *Id*. at 5.

Although not dispositive, a defense attorney's view about the competence of her client or the need for a psychological evaluation is "unquestionably a factor which should be considered" by the district court. *Drope v. Missouri*, 420 U.S. 162, 178 n.13 (1975); *see United States v. Klat*, 213 F.3d 697, 703 (D.C. Cir. 2000). In this case, the court gave defense counsel's view due consideration and sent a clinical psychologist to the jail to conduct a psychological screening. But the court also knew that counsel had no basis for making a

competency evaluation of her own, because she reported to the court that Jones "had refused to talk to her." Sentencing Hr'g Tr. 4 (Nov. 24, 2009).

Needless to say, a court must also consider the professional evaluation of a psychologist the court itself sends to screen a defendant. But that psychologist reported that Jones "wouldn't talk to [her]," either. *Id*. at 5. In context, then, it is clear that this psychologist likewise had no basis for a professional evaluation of her own. She recommended that Jones be sent for an inpatient examination not because she thought him incompetent, but because his refusal to speak to her prevented her from making an evaluation.

Beyond relying on the attorney's and psychologist's recommendations, Jones does not point to anything in his behavior, demeanor, or prior medical history as indicating that a competency examination or hearing was necessary. *See Drope*, 420 U.S. at 180 (holding that these factors are "relevant in determining whether further inquiry" regarding a defendant's competency "is required").[4] Jones does not, for example, point to his refusal to cooperate with the psychologist and his appointed attorneys. The court attributed that refusal to his "obstinacy," not to a lack of "mental competency," repeating that "I think you're perfectly competent and intelligent and know what you're about." Sentencing Hr'g Tr. 5 (Nov. 24, 2009). Under the circumstances, that was a reasonable conclusion. "The relevant legal question is not whether appellant *will* 'assist properly in his defense,' but whether 'he is

---

[4]In this regard, Jones' case is considerably different from *United States v. Williams*, 113 F.3d 1155 (10th Cir. 1997), a case he cites on appeal. In *Williams*, the Tenth Circuit ruled that the trial court should have held a competency hearing in light of the defendant's "irrational behavior" at trial, including her "outbursts and hysteria." *Id.* at 1160.

*able* to do' so." *United States v. Battle*, 613 F.3d 258, 263 (D.C. Cir. 2010) (quoting *United States v. Vachon*, 869 F.2d 653, 655 (1st Cir. 1989)) (first emphasis added). As we have previously noted, "uncooperativeness with one's counsel does not alone prove an inability to communicate." *United States v. Caldwell*, 543 F.2d 1333, 1349 n.70 (D.C. Cir. 1975); *accord Battle*, 613 F.3d at 263.

Finally, although Jones does not expressly contend that his persistence in trying to withdraw from a favorable plea agreement was itself sufficient reason to believe that he was suffering from a mental disease or defect, he does hint that "some observers believed" he was acting "irrationally" in doing so. Appellant's Br. 29. The district court rejected that suggestion, concluding that Jones' problem was not "mental capacity" but "obstinancy" -- he "just decided [he] didn't like the deal [he] cut." Sentencing Hr'g Tr. 5 (Nov. 24, 2009). We have no ground for overturning that conclusion. *Cf. Perez*, 603 F.3d at 48 (concluding that, although the defendant "held dubious legal views and pursued an inadvisable strategy, none of this provided reasonable cause for the district court to question his competence to stand trial").

By contrast to the attorney and psychologist, the district judge did have an opportunity -- over the course of six hearings -- to speak with Jones and observe his demeanor. On that basis, the judge told Jones: "I've been observing you in court on the several occasions you've been here . . . . I don't think there's anything wrong with your head. I think you're perfectly competent." Sentencing Hr'g Tr. 5 (Nov. 24, 2009). As we held in *Battle*, "[b]ecause 'evidence of a defendant's . . . demeanor at trial . . . [is] relevant' in determining competency," a district "court [i]s justified in relying on its own observations" as part of determining whether a competency examination or hearing is required. 613 F.3d at 263 (quoting *Drope*, 420 U.S. at 180).

And because there was nothing in the record before the court to give it "reasonable cause" to believe that Jones might be suffering from a mental disease or defect rendering him mentally incompetent, 18 U.S.C. § 4241(a), the court did not abuse its discretion in denying Jones' motion to withdraw his plea without first holding a competency hearing or ordering another examination.

## III

For the forgoing reasons, we affirm the district court's denial of Jones' motion to withdraw his guilty plea. In keeping with this court's general practice, we remand Jones' ineffective assistance of counsel claim, raised for the first time on appeal, for an evidentiary hearing before the district court. *See supra* note 3.

*So ordered.*