# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 11, 2012         Decided October 2, 2012

No. 11-3037

UNITED STATES OF AMERICA,
APPELLEE

v.

TYRONE HINES,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cr-00150-1)

———

*Matthew Gardner Kaiser*, appointed by the court, argued the cause for the appellant.

*Suzanne Grealy Curt*, Assistant United States Attorney, argued the cause for the appellee. *Ronald C. Machen, Jr.*, United States Attorney, and *Roy W. McLeese III* and *John P. Mannarino*, Assistant United States Attorneys, were on brief. *Elizabeth Trosman*, Assistant United States Attorney, entered an appearance.

Before: HENDERSON and BROWN, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Appellant Tyrone Hines was convicted of one count of bank robbery and two counts of attempted bank robbery and was sentenced to concurrent terms of 132 months on each count. He challenges his conviction on the grounds that the district court erred in failing to hold a competency hearing and in extending the thirty-day deadline for indicting a defendant following arrest under the Speedy Trial Act (STA, Act), 18 U.S.C. §§ 3161 et seq. He also challenges his sentence, asserting the district court erroneously increased his offense level for obstruction of justice pursuant to section 3C1.1 of the United States Sentencing Guidelines (Guidelines) based on a statement he made at a pre-trial suppression hearing, which the court found to be deliberately false. Notwithstanding the able and vigorous advocacy of Hines's appellate counsel, we affirm Hines's conviction and his sentence.

## I.

Hines was arrested on March 9, 2010 and charged in a criminal complaint with the March 4, 2010 attempted robbery of a BB&T Bank branch in Washington, D.C.[1] A magistrate judge denied Hines's motion for release from custody and committed him to government custody, concluding there were "no conditions that [he] could set that would reasonably assure [Hines's] appearance or that he would not commit new crimes if released, and he should be detained pending trial." Detention Mem. at 4, *United States v. Hines,* Cr. No. 10-150 (D.D.C. Mar. 24, 2010).

Under the STA, the government must indict a defendant within thirty days after his arrest, 18 U.S.C. § 3161(b), and try him within seventy days after the indictment, *id.* § 3161(c)—except that a pre-trial detainee, such as Hines,

---

[1] All dates are in 2010 unless otherwise noted.

must be tried within ninety days after he is first detained, *id*. § 3164(b)[2]—all subject to the exclusion of "periods of delay" as authorized under 18 U.S.C. § 3161(h).  On April 7 and May 4, a magistrate judge granted joint motions filed by Hines's then-counsel and the government seeking two separate, successive thirty-day "interests-of-justice" continuances to be excluded from the STA calendar pursuant to 18 U.S.C. § 3161(h)(7), which lists as one of the periods which "shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence":

---

[2]The STA provides in relevant part:

(b) Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. . . .

(c)(1) In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(b)-(c); and:

The trial of any [detained person who is being held in detention solely because he is awaiting trial] shall commence not later than ninety days following the beginning of such continuous detention . . . . The periods of delay enumerated in section 3161(h) are excluded in computing the time limitation specified in this section.

*Id*. § 3164(b).

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

The stated purpose of each exclusion motion was to allow ongoing plea negotiations to continue and the second motion sought as well "an opportunity to complete a mental health evaluation." Joint Mot. to Exclude Additional Time Under the Speedy Trial Act, *United States v. Hines*, Cr. No. 10-150 (D.D.C. Apr. 30, 2010). Together, the two continuances extended the indictment deadline to June 7. Shortly after the second motion was filed, however, Hines informed his counsel that he did not want a plea offer and, upon being so notified, the government proceeded with the indictment. On June 3, the grand jury returned an indictment charging Hines with three counts: (1) robbery of a Citibank branch on February 26; (2) attempted robbery of a Bank of America branch on March 4; and (3) attempted robbery of the BB&T Bank branch on March 4 (all in violation of 18 U.S.C. § 2113(a)).

Hines was arraigned on June 16 and pleaded not guilty. At the arraignment, the district court asked Hines's counsel

about the nature of the two STA exclusions, in particular whether they applied to both the thirty-day indictment deadline and the additional ninety-day trial deadline or only to the former. Counsel responded that she did not believe her client "specifically agreed to any exclusion of time, other than the exclusion of time within which to indict him" and that he "was excluding time within which the Government would have to indict him to give [her] an opportunity to present to him the best plea offer." Tr. of Arraignment at 8, 10, *United States v. Hines*, Cr. No. 10-150 (D.D.C. June 16, 2010). She also informed the court the mental health evaluation mentioned in the second motion to exclude "was at [her] request," was "still an ongoing process" and "was done for the purposes of trying to convince the Government to give [Hines] a better plea offer." *Id*. at 7. Concluding the matter was not "as clear-cut as it might be," the court indicated it would examine the record further and invited counsel to file a written explanation of her position. *Id*. at 9. Later during the proceedings, counsel informed the court that Hines had "expressed dissatisfaction with her representation." *Id*. at 22. After questioning Hines about his willingness to proceed with his current counsel, and explaining to Hines that appointing new counsel would delay the case, the court agreed to look into finding new counsel to represent him. On June 21, the district court conducted a status hearing at which new counsel represented Hines. The government moved to exclude from the STA calendar the period from June 26 to July 7 to make up for the delay caused by changing counsel.[3] Hines agreed to the exclusion.

---

[3]The government explained that "previous defense counsel was prepared to file [certain motions] on the 26th and new defense counsel understandably needs until July 7th." Tr. of Status Hr'g at 20, *United States v. Hines*, Cr. No. 10-150 (D.D.C. June 21, 2010).

On July 19, Hines moved the court for release pending trial, asserting "a violation of his rights under the [STA]." Mot. to Recons. Def.'s Bond at 1, *United States v. Hines*, Cr. No. 10-150 (D.D.C. July 19, 2010). According to the motion, Hines's first lawyer "excluded the time to indict [Hines], but did not exclude the time to bring [him] to trial" so that "[t]he ninety-day (90) period for [Hines] to go to trial tolled on Monday June 7, 2010 and therefore [he] should be released pending his trial." *Id*. at 2. The district court denied the motion on the ground that a continuance under section 3161(h) "appl[ies] both in calculating the time within which an indictment must be filed under section 3161(b) as well as in calculating the time within which a trial must begin under either section 3161(c)(1) or section 3164(b)." Mem. Order at 6, *United States v. Hines*, Cr. No. 10-150 (D.D.C. July 30, 2010) (citing U.S.C. §§ 3161(h), 3164(b)).

In a July 30 hearing, Hines informed the court that he and his second lawyer were experiencing "irreconcilable differences," Tr. of Status Hr'g at 23, *United States v. Hines*, Cr. No. 10-150 (D.D.C. July 30, 2010), but ultimately agreed he was "satisfied" and would "work with" his lawyer, *id*. (ex parte) at 7. Nonetheless, on August 23, his lawyer filed a motion to withdraw as counsel, citing "irreconcilable differences which have resulted in the parties['] inability to discuss the case." Mot. to Withdraw as Counsel for Def. at 1, *United States v. Hines*, Cr. No. 10-150 (D.D.C. Aug. 23, 2010). At the hearing on the motion, Hines recited various objections to his lawyer's representation. Despite its skepticism of Hines's complaints, the court agreed to appoint new counsel.

Meanwhile, at an August 8 evidentiary hearing on Hines's two motions to suppress, the court had asked Hines's second lawyer if a mental evaluation had ever been performed. Counsel reported that it had but "they did not find

that there were any issues that rose to the level of not being competent." Tr. of Mot. Hr'g at 5, *United States v. Hines*, Cr. No. 10-150 (D.D.C. Aug. 8, 2010). The court concluded "there didn't appear to be any competency issues" and counsel agreed. *Id*. at 8.

At a status hearing on August 11, the court denied the motions to suppress, in part because it discredited Hines's claim that he was interviewed and confessed on March 10, rather than on March 9, as the government witnesses and other evidence indicated. Hines, she observed, "could be confused or decided based on his own legal research that he could raise an issue to get his confession suppressed by changing the timing." Tr. of Status Hr'g at 18, *United States v. Hines*, Cr. No. 10-150 (D.D.C. Aug. 11, 2010). At the hearing, the court again observed—this time in the context of Hines's *Miranda* rights waiver—that the mental health evaluation had not raised any competency issues with him.

At an August 30 status hearing, Hines's third lawyer—who had just been appointed—reported that the first defense counsel had agreed to obtain a written assessment from the psychologist who had assessed Hines's mental health and stated that his brief conversations with Hines had not raised any competency concerns with him.

Hines's criminal trial began on October 26. The government presented overwhelming evidence of Hines's guilt—including his confession to all three offenses, his identification by one of the tellers, his image on bank surveillance tapes and his fingerprints on a note demanding $5,000 from the BB&T Bank teller. Hines elected not to present any evidence. The jury retired to deliberate shortly after 3:00 p.m. on October 27 and around noon the next day returned a verdict of guilty on all three counts of the indictment.

Hines was sentenced on March 30, 2011. Expressly adopting the pre-sentencing report, the court calculated a Guidelines sentencing range of 140 to 175 months, based on a criminal history of V and an adjusted offense level of 29, including a two-point enhancement for obstruction of justice premised on the court's factual finding "by clear and convincing" evidence at the August 11 status hearing that Hines's suppression hearing testimony regarding the date of his interview and confession "was false" and Hines "deliberately lied." Tr. of Sentencing Hr'g at 21, *United States v. Hines*, Cr. No. 10-150 (D.D.C. Mar. 30, 2011). The court then sentenced Hines to concurrent terms of 132 months on each count, to be followed by a three-year period of supervised release, and ordered him to pay three $100 special assessments and restitution of $5,000.

Hines timely appealed his conviction and sentence.

## II.

We address Hines's three grounds for appeal separately.

### A. Speedy Trial Act

First, Hines contends the district court should have sua sponte dismissed the indictment because he was not indicted within thirty days after his arrest as required under the STA, 18 U.S.C. § 3161(b). In particular, Hines argues that the two thirty-day continuances the court ordered when it granted the joint motions by Hines and the government were not properly subtracted because the court did not set out in the record adequate "reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial" pursuant to 18 U.S.C. § 3161(h)(7)(A). Accordingly, he asserts, his "rights under the Speedy Trial Act were violated" and "the indictment against him should be dismissed." Appellant's Br. at 48. We need not decide the propriety of the

two continuances because, under 18 U.S.C. § 3162(a)(2), Hines waived his right to dismissal by failing to move to dismiss the indictment before his trial commenced.

In construing section 3162(a)(2)'s waiver provision, we "[p]roceed[] as we must from the fundamental canon that statutory interpretation begins with the language of the statute itself." *United States v. Hart*, 324 F.3d 740, 745 (D.C. Cir. 2003) (quotation marks omitted). Section 3162(a) provides:

> (a)(1) If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

> (2) If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant. The defendant shall have the burden of proof of supporting such motion but the Government shall have the burden of going forward with the evidence in connection with any exclusion of time under subparagraph 3161(h)(3). In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the

> offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice. *Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section.*

18 U.S.C. § 3162(a)(1)-(2) (emphasis added). Although the italicized waiver language appears only in subsection (a)(2) (addressing tardy-trial dismissals) and not in subsection (a)(1) (addressing tardy-indictment dismissals), as we observed in *United States v. Bittle*, 699 F.2d 1201 (D.C. Cir. 1983), the waiver provision may well apply to both subsections. *See Bittle*, 699 F.2d at 1207 n.15 ("Perhaps the provision in subsection (a)(2) governs subsection (a)(1) because the provision refers to '*section*' rather than '*subsection*,' but we need not decide this issue." (emphases added)); *cf. United States v. Taylor*, 497 F.3d 673, 676 n.3 (D.C. Cir. 2007) ("[U]nder § 3162(a)(2), a defendant's failure to 'move for dismissal prior to trial' constitutes waiver of § 3161(c) claims. It is unclear whether [the defendant's] motion to dismiss based on a separate provision [§ 3161(b)] suffices to avoid waiver."). Since *Bittle*, three of our sister circuits have so construed the waiver language. *See United States v. Spagnuolo*, 469 F.3d 39, 44 (1st Cir. 2006) ("Applying the normal rules of statutory construction leads us to conclude that the motion and waiver provision of § 3162(a)(2) also applies to § 3162(a)(1) speedy indictment claims, because 'section' must refer to all of § 3162, and not just to the paragraph in § 3162 where the motion and waiver provision was (improvidently) located."); *United States v. Brown*, 287 F.3d 684, 687–88 (8th Cir. 2002) ("[W]e conclude that Brown waived his right to appeal the speedy trial issue when he failed to seek a dismissal of the indictment prior to trial."

(citing 18 U.S.C. § 3162(a)(2))); *United States v. Gamboa*, 439 F.3d 796, 803–04 (8th Cir. 2006) (citing 18 U.S.C. § 3162(a)(2) and concluding defendant waived his right to raise a speedy-indictment issue on appeal by failing to move for dismissal on that ground before trial in district court); *United States v. Lewis*, 980 F.2d 555, 560 (9th Cir. 1992) ("A defendant seeking to dismiss a case for a claimed violation of the STA's speedy indictment provisions must move for dismissal *prior to trial* (although not necessarily before indictment) or he waives his right to dismissal under § 3162(a)(1)" (emphasis in original)), *abrogated on other ground by Bloate v. United States*, 130 S. Ct. 1345 (2010). We do so now as well.

The Congress "ordinarily adheres to a hierarchical scheme in subdividing statutory sections," which scheme uses, successively, "subsections" (e.g., "(a)"), "paragraphs" (e.g., "(1)"), subparagraphs (e.g., "(A)") and "clauses" (e.g., "(i)"). *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60-61 (2004). Elsewhere in the STA, the Congress used its customary language. *See, e.g.,* 18 U.S.C. § 3161(d)(2) ("The sanctions of *section* 3162 apply to this *subsection*."), (h)(3)(B) ("For purposes of *subparagraph* (A) of this *paragraph . . . .*"), (h)(7)(B)(iv) (referring to "*clause* (ii)") (emphases added). Thus, had the Congress intended to limit the waiver provision to dismissals for untimely trials only (and not extend it to untimely indictments as well), we would expect the statute to read: "Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this *paragraph*"—or perhaps even "under this *subsection*," *see Bittle*, 699 F.2d at 1207 n.15. As written, however, the language provides for waiver of the right to dismissal under the *entire* section, including dismissal both for an untimely indictment and for an untimely trial. *Accord Spagnuolo*, 469 F.3d at 44.

The literal construction of the waiver provision (applying to both (a)(1) and (a)(2) dismissals) is also supported by its legislative history. The House of Representatives Report on the 1975 House bill that enacted section 3162—and it was the House bill that was subsequently enacted by both chambers of the Congress—appears to treat indictment and trial dismissals identically, requiring that in either case the defendant file a motion to dismiss and providing that he waives the right to dismissal if he does not so move before his trial begins:

*Dismissal with prejudice*

In the event that the time limits of the bill, subject to the various exclusions, are not met, the court *on motion of the defendant may dismiss the complaint*, *information or indictment* against the individual. *This sanction applies to both the period between arrest and indictment and between indictment and trial.* The effect of a dismissal would be to bar any future prosecution against the defendant for charges arising out of the same conduct. Dismissal with prejudice would apply to those offenses which were known or reasonably should have been known at the time of dismissal. *A defendant must move to dismiss the case prior to trial, entry of a plea of guilty or nolo contendere, or he waives the right of dismissal with prejudice on grounds that the requirements of this legislation were not met.* [Section 3162(a)].

H.R. Rep. No. 93-1508, at 23 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7401, 7416 (emphases added).

Moreover, applying the waiver to section 3162(a)(1) dismissal is also consistent with the waiver provision's purpose. The United States Supreme Court has observed that section 3162(a)(2)

> serves two unrelated purposes. First, § 3162(a)(2) assigns the role of spotting violations of the Act to defendants—for the obvious reason that they have the greatest incentive to perform this task. Second, by requiring that a defendant move before the trial starts or a guilty plea is entered, § 3162(a)(2) both limits the effects of a dismissal without prejudice (by ensuring that an expensive and time-consuming trial will not be mooted by a late-filed motion under the Act) and prevents undue defense gamesmanship.

*Zedner v. United States*, 547 U.S. 489, 502-03 (2006) (footnote omitted). These same two purposes apply equally to dismissal of an indictment under section 3162(a)(1). Without the waiver provision, a defendant has no incentive to police the government's compliance with the STA's indictment deadlines. More importantly, without the waiver constraint a defendant may freely game the system by rolling the dice on a trial and then seeking a section 3162(a)(1) dismissal for failure to timely indict—if he is unhappy with the result—putting the prosecution and the court through the time, effort and expense of a trial that may subsequently be mooted at the defendant's whim. *See Spagnuolo*, 469 F.3d at 44 ("The Act created incentives both for compliance by the government and for enforcement by defendants. It would be odd to use a different set of incentives for the two situations of speedy indictment and speedy trial. Under both, a defendant must move promptly, or waive his rights.").

Applying the waiver to tardy-indictment dismissals is also consistent with other provisions of the Act, which generally (but for the different deadlines for each) treat indictments and trials identically. Significantly, for example, the STA treats an exclusion under section 3161(h) as having the same effect on both the time for indictment and the time for trial. *See* 18 U.S.C. § 3161(h) ("The following periods of

delay shall be excluded in computing the time within which an information or an indictment must be filed, *or* in computing the time within which the trial of any such offense must commence: . . . ." (emphasis added)). Given the Congress's gamesmanship concern, we see no reason it would have foreclosed a trial-time challenge once a trial begins, while freely allowing through appeal an identical challenge to the exclusion as applied to the time for indictment.

Hines raises a single argument in his reply brief opposing the government's waiver assertion. He urges that finding waiver would be contrary to the Supreme Court's decision in *Zedner*. There, the Court concluded that a defendant had not effectively waived his right to a speedy trial when, at the district judge's urging, he signed "a blanket, prospective waiver of his rights under the Act," waiving them "for all time." *Zedner*, 547 U.S. at 492, 494 (quotation marks omitted). The Court reasoned that the STA "was designed with the public interest firmly in mind" and "[t]hat public interest cannot be served, the Act recognizes, if defendants may opt out of the Act entirely." *Id.* at 501. Thus, the Court explained, "[a]llowing prospective waivers would seriously undermine the Act because there are many cases—like the case at hand—in which the prosecution, the defense, and the court would all be happy to opt out of the Act, to the detriment of the public interest." *Id.* at 502. Waiver under section 3162(a)(2), however, is not prospective but retrospective, is authorized under the Act and is consistent with its policies. *See id.* ("The sort of retrospective waiver allowed by § 3162(a)(2) does not pose a comparable danger because the prosecution and the court cannot know until the trial actually starts or the guilty plea is actually entered whether the defendant will forgo moving to dismiss. As a

consequence, the prosecution and the court retain a strong incentive to make sure that the trial begins on time.").[4]

Accordingly, we conclude that under section 3162(a)(2)'s waiver provision, Hines waived his right to seek dismissal under section 3162(a)(1) based on an untimely indictment.[5]

### B. Competency Hearing

Hines next challenges the district court's failure to order a competency hearing *ex mero motu*. We review the district court's failure to so order for abuse of discretion. *United States v. Jones*, 642 F.3d 1151, 1159 (D.C. Cir. 2011); *United States v. Perez*, 603 F.3d 44, 47 (D.C. Cir. 2010).

"A defendant has a right to a competency hearing 'if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the

---

[4]Under this reasoning, we cannot uphold the interests-of-justice exclusions solely on the ground that Hines himself voluntarily approved them—we would also have to examine the adequacy of the district court's findings supporting the exclusions. *See Zedner*, 547 U.S. at 500-01 ("The purposes of the Act also cut against exclusion on the grounds of mere consent or waiver. If the Act were designed solely to protect a defendant's right to a speedy trial, it would make sense to allow a defendant to waive the application of the Act. But the Act was designed with the public interest firmly in mind.").

[5]Apart from the parties' waiver discussions, Hines asserts that his second lawyer was ineffective in failing to move for dismissal based on the untimely indictment at the same time he moved for Hines's release under 18 U.S.C. § 3164(c). Given the facts in this case, counsel's failure to move for dismissal was not "outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

proceedings against him or to assist properly in his defense.' " *Jones*, 642 F.3d at 1159 (quoting 18 U.S.C. § 4241(a)). "Competence to stand trial requires 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and . . . a rational as well as factual understanding of the proceedings against him.' " *United States v. Klat*, 213 F.3d 697, 702 n.5 (D.C. Cir. 2000) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)) (internal quotation marks omitted). The district court had no reason to believe Hines lacked such competence. Among the factors a court must consider are "a defense attorney's view about the competence of her client" and "the professional evaluation of a psychologist." *Jones*, 642 F.3d at 1160 (citing *Drope v. Missouri*, 420 U.S. 162, 178 n.13 (1975)). Here the court considered both factors and reasonably found they provided no basis to question Hines's competence.

Hines's first counsel gave no indication she thought him incompetent to stand trial. Although she requested a mental health evaluation, she did so only "for the purpose of trying to convince the Government to give [Hines] a better plea offer." Arraignment Tr. at 7.

Hines's second lawyer informed the court that he had talked to the person who performed the evaluation and reported "they did not find that there were any issues that rose to the level of not being competent." Aug. 8, 2010 Suppression Mot. Hr'g Tr. at 5. The court responded: "I guess from my perspective the evaluation indicated there didn't appear to be any competency issues. . . . [I]s there an issue that needs to be raised at this point in the context of . . . his competency now . . . ?" *Id*. at 8. Counsel replied:

> I don't believe so, Your Honor. I think that—the only thing that I can say is that I think there are times when I thought I might have had that sense, but in more and more dealing with [Hines], it's not my

> impression that he has a competency issue, but I'm not an expert. But to the extent that I can say, I think that the more that I've dealt with [Hines], the more I have a better understanding of some of the things that he raises and why, and some of the adamancies, for lack of a better word, therefrom. . . . But not that I can say at this point, to the point where I'd say, oh, he has a competency issue where he doesn't appreciate what's going on.

*Id*. The Court then stated: "So, it sounds as if the evaluation that [Hines's first counsel] did doesn't raise an issue, and you in dealing with him, which his competency really to a large degree comes up to what does he understand, can he participate, defend himself, et cetera." Counsel responded: "Right." *Id*. at 8-9. A few days later at the status hearing denying Hines's motions to suppress, the court observed that Hines had been "examined by a psychologist at the request of the defense counsel" and "[t]he findings show no competency issues which would reflect on whether any mental incapacity to interfere with his understanding his rights." Aug. 11, 2010 Status Hr'g Tr. at 26.

Finally, during the first status hearing after he was appointed counsel, Hines's third lawyer told the court that his "brief discussions" with Hines had not "raised a concern with [him] that . . . there [was] anything going on that ha[d] a bearing on his ability to communicate with counsel or to effectively assist in structuring a defense." Tr. of Status Hr'g at 4, *United States v. Hines*, Cr. No. 10-150 (D.D.C. Aug. 30, 2010). At the sentencing, moreover, the lawyer assured the court: "I'm not . . . requesting of the Court any kind of forensic evaluation of [Hines] at this point. I do believe he's competent." Sentencing Tr. at 3. All of the foregoing evidence supports the court's repeated opinion that Hines presented no competency issues.

Hines offers three grounds for rejecting the trial court's competency determination: (1) Hines was previously found not guilty by reason of insanity (NGI) in a Virginia state criminal prosecution; (2) he stated he had been diagnosed as bipolar, apparently in 2009; and (3) his "conduct throughout th[e] case leaves little doubt that he was unable to assist counsel." Appellant's Br. at 26.

Regarding the NGI verdict, it came to light only after trial and, as the district court observed, Hines's lawyer in the Virginia case had objected to the NGI verdict and the Virginia judge had "made no findings" about it. Sentencing Hr'g Tr. at 4. Tellingly, the fact of a NGI verdict suggests the Virginia court considered Hines competent at the time of his trial (whatever his mental condition at the time of the crime). Thus, the mere fact of the NGI verdict says nothing about competence vel non at the time of his trial in October 2010.

Moreover, whether or not an accurate bipolar diagnosis may have been made in 2009, as Hines asserted, the recent July 2010 mental health evaluation Hines's first lawyer requested expressly "ruled out any bipolar disorder." Sentencing Hr'g Tr. at 38.

Finally, Hines's conduct leading up to trial displayed an awareness of the proceedings' nature and significance and he took an active (if sometimes misguided) role in his defense. As the court observed, Hines "had ideas and some of them may be fixed, but [he is] entitled to have [his] own ideas." Sentencing Hr'g Tr. at 7. Even if ill-advised, his proposed defense strategies did not create reasonable cause to believe him incompetent to stand trial. *See Perez*, 603 F.3d at 48 ("Although [the defendant] may have held dubious legal views and pursued an inadvisable strategy, none of this provided reasonable cause for the district court to question his competence to stand trial. As the Seventh Circuit has recognized, 'persons of unquestioned competence have

espoused ludicrous legal positions, but the articulation of unusual legal beliefs is a far cry from incompetence.' " (quoting *United States v. Alden*, 527 F.3d 653, 660 (7th Cir. 2008))).[6]

### C. Obstruction of Justice Enhancement

Finally, Hines asserts the district court improperly imposed a 2-point enhancement for obstruction of justice based on its finding that he deliberately misrepresented that he was not interviewed until March 10, 2010 when in fact he was interviewed and confessed on March 9, 2010. We reject this contention as well.

Hines argues that the district court's finding at the March 30, 2011 sentencing hearing that he "deliberately lied" about the date of his interview, Sentencing Hr'g Tr. at 21, is inconsistent with its earlier statement at the August 11 status hearing that Hines "could be confused or decided based on his own legal research that he could raise an issue to get his

---

[6]We reject outright Hines's suggestion that the district court was required to conduct a competency simply because it "questioned" his competency to stand trial. Appellant's Br. at 25. The court asked about Hines's mental state solely because one of the STA exclusion motions sought time for a mental health examination—which Hines's counsel acknowledged was a strategic move intended to secure a more favorable plea offer. Neither the fact of the examination nor the court's consequent inquiry regarding Hines's mental health manifested a reasonable cause to believe he was not competent to stand trial. *See Perez*, 603 F.3d at 47-48; 18 U.S.C. § 4241(a). To the contrary, the court made clear that it found that Hines presented no "competency issues," Aug. 8, 2010 Suppression Mot. Hr'g Tr. at 8, and, given all of the evidence cited *supra*, this determination was not an abuse of discretion.

confession suppressed by changing the timing."[7] Aug. 11, 2010 Status Hr'g Tr. at 18. Not so. As the court explained at sentencing, it made no finding of intent at the earlier hearing:

> So, as part of my Court findings, I didn't conclude or make a finding one way or the other about his intent or motivation for the false testimony, it was immaterial at that time. I did make a finding I didn't believe him by not crediting his testimony. All of the evidence pointed to and supported March 9th as the correct date. And even his own videotaped statement supported March 9th as the date, and I made that finding at the hearing for suppression.

Sentencing Hr'g at 20. At sentencing, however, when it came time to make a finding on a U.S.S.G. § 3C1.1 obstruction of justice enhancement, the court made an express finding "by clear and convincing" evidence that Hines's testimony regarding the date of the confession "was false" and that Hines "deliberately lied." Sentencing Hr'g Tr. at 21. In so finding, the court noted that at the status hearing (the

---

[7]The court found it particularly significant that Hines had "done . . . legal research" regarding the timing of his statement. Sentencing Tr. at 22. The court "observed his demeanor" at the suppression hearing and found that "he knew exactly what he was saying and why he was claiming it was March 10th and not March 9th." *Id.* The court explained at the August 11 status hearing:

> As the defendant testified, he had done legal research. He testified that from arrest to the time of the statement it had to be from three to six hours but not more than eight hours. The Court would note that from arrest to statement, in D.C. Superior Court, the time limit is three hours, in Federal Court it is six hours for the confession to be admissible, if it's voluntary and conforms to other requirements.

Aug. 11, 2010 Status Hr'g Tr. at 18-19.

transcript of which the court had reviewed before sentencing), when asked about his videotaped interview and confession, Hines "repeatedly stated, quote: I remember it was the 10th. Unquote. Quote: I remember it was the l0th because I was arrested on the 9th. Unquote." *Id.* The court added: "He never states he was confused, he can't recall or equivocates in any way. He makes a very definitive statement that the interview was on March 10th." *Id.* at 21-22. The court's finding of fact is "to be affirmed unless clearly erroneous." *United States v. Davis*, 635 F.3d 1222, 1224 (D.C. Cir. 2011). Given the testimony on which the court relied, its finding is not clearly erroneous.

For the foregoing reasons, Hines's conviction and sentence are affirmed.

*So ordered.*