[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13428

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ELVIS EGHOSA OGIEKPOLOR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:21-cr-00016-WMR-RDC-1

_____

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR and BRASHER, Circuit Judges.

JILL PRYOR, Circuit Judge:

Elvis Eghosa Ogiekpolor appeals his convictions for conspiring to commit money laundering and 15 counts of money laundering. On appeal, he challenges his convictions based on Sixth Amendment and Speedy Trial Act, 18 U.S.C. § 3161(b)–(c), violations. After careful consideration, and with the benefit of oral argument, we affirm the district court's judgment.

## I.    BACKGROUND

### A.    The Fraudulent Scheme

The charges in this case arose from business email compromise schemes and online romance scams to defraud victims into sending the perpetrators money. A business email compromise scheme involves a "computer intrusion that occurs when an employee of a company is tricked into interacting with an [illegitimate] email." Doc. 56 at 2.[1] After the employee clicks on an attachment or link, "malware . . . infects the employee's email account and/or computer." *Id.* The malware allows scammers to access sensitive company information, including login credentials and email correspondence, "which can then be used to defraud the victim company." *Id.* In a common form of such a scheme, "[a]fter an initial transfer or wiring instruction is conveyed between legitimate

---

[1] "Doc." numbers refer to the district court's docket entries.

parties to [a financial] transaction, the intruder sends a fraudulent follow-up email that appears to be coming from the original legitimate sender." *Id.* The intruder's email instructs the victim company to wire funds into a different account—one controlled by the intruder or an accomplice.

A romance scam occurs when "an imposter posing as a potential paramour" targets vulnerable individuals on dating websites to get them to send money under false pretenses. *Id.* at 2–3. "Once an online relationship is formed with the victim, the scammer tricks the dating website victim into sending money"—wire transfers, checks, or cash—to the scammer or associated individuals. *Id.* at 3.

In this case, the government alleged that Ogiekpolor ran an operation to launder money obtained from business email compromise schemes and romance scams. He and co-conspirators working at his direction registered sham corporations and then opened bank accounts in the corporations' names. They deposited money obtained from the victims of the scams into these bank accounts. From there, Ogiekpolor withdrew the funds and dispersed them to other, presumably non-fraudulent, bank accounts. According to the government, he laundered approximately six million dollars in fraud proceeds.

## B.    The District Court Proceedings

In this subsection, we describe the government's prosecution of Ogiekpolor for his role in the fraudulent scheme. Because

he raises speedy trial issues on appeal, we must discuss in some detail the history of the various criminal proceedings against him.

On August 20, 2020, the government charged Ogiekpolor, via criminal complaint, with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), and money laundering, in violation of 18 U.S.C. § 1957. The complaint alleged that he engaged in criminal activity beginning in October 2019 and continuing through the filing of the complaint. According to the complaint, he directed a person he met online to register a new Georgia business entity with Georgia's Secretary of State and then open bank accounts for that entity at five different banking institutions. Later, he deposited into those bank accounts the proceeds from fraudulent transactions. He was arrested on the same day the criminal complaint was filed. The next day, he made his initial appearance in court.

Shortly after the initial appearance, the magistrate judge held a detention hearing and ordered that Ogiekpolor be detained pending trial. The magistrate judge determined that pretrial detention was necessary because there was a serious risk that otherwise Ogiekpolor would not appear at trial. The magistrate judge found that he had weak ties to the United States, had substantial ties to Nigeria, and had overstayed his immigration visa.

The magistrate judge promptly scheduled a preliminary hearing, but the hearing was delayed several times while the government and Ogiekpolor discussed a pre-indictment resolution and government cooperation. The ongoing COVID-19 pandemic also

made it difficult for Ogiekpolor and his attorney to communicate. The parties submitted three consecutive motions to continue the preliminary hearing. Each motion was granted. The magistrate judge specified that the time covered by the continuances—September 2 through November 17, 2020—would be excluded for Speedy Trial Act purposes.

On November 18, 2020, the government filed an information charging Ogiekpolor with conspiracy to commit money laundering, in violation of 18 U.S.C. § 371, arising from conduct alleged in the August 2020 complaint. He waived indictment and was arraigned the same day.

Shortly after the information was filed, Ogiekpolor indicated that he planned to plead guilty. But at the change of plea hearing, he denied that he committed the fraud, so the court did not proceed with the change of plea. Now proceeding *pro se*, after the district court found good cause for his appointed counsel to withdraw, he filed a motion to dismiss the information based on the Speedy Trial Act.

On January 13, 2021, while the motion to dismiss was pending, a grand jury returned an indictment charging Ogiekpolor with conspiracy to commit money laundering, in violation of 18 U.S.C. § 371. The indictment covered the same period as the initial complaint and the information. For the indictment's single conspiracy charge, Ogiekpolor faced a maximum sentence of five years' imprisonment. *See* 18 U.S.C. § 371. When the indictment was

returned, the district court opened a new criminal case and, on the government's motion, dismissed the information.

In the new criminal case, the magistrate judge appointed Ogiekpolor new counsel. The magistrate judge rescheduled a pretrial conference and directed the clerk to exclude for speedy trial purposes the period from February 5 through March 3, 2021. Through counsel, Ogiekpolor then filed two unopposed motions to continue pretrial deadlines. The magistrate judge granted these motions and excluded the period from March 3 through April 21, 2021 from the speedy trial clock.

Ogiekpolor moved in April 2021 to dismiss the indictment based on the amount of time that had passed between his initial arrest on August 20, 2020 and the filing of the information on November 18, 2020. He argued that the government violated the Speedy Trial Act's § 3161(b), which requires an information or indictment to be filed within 30 days of a person's arrest.

While the motion to dismiss was pending, Ogiekpolor informed the court that he wished to proceed *pro se*. The district court allowed him to proceed *pro se* with the assistance of standby counsel.

In November 2021, the district court denied Ogiekpolor's motion to dismiss. The court acknowledged that an information or indictment generally had to be filed within 30 days of a defendant's arrest. But it concluded that "only eleven 'non-excludable' days elapsed between Defendant's arrest (August 20, 202[0]) and the . . . filing o[f] the Information (November 18, 202[0])." Doc. 38 at 7. In

concluding that the time between the filing of the information and the indictment did not make the indictment untimely, the court reasoned that Ogiekpolor had "formal notice of the charge against him upon the filing of the Information . . . , and the Indictment was obtained only as a result of [Ogiekpolor's] aborted guilty plea on the Information." *Id.* at 8. Thus, "certain periods between November 18, 2020 and January 13, 2021, [were] excludable" such that the 30-day clock had not run. *Id.* at 8–9.

After denying the motion to dismiss, the court set a trial date for November 30, 2021. On November 13, 2021, the government moved to continue the trial, indicating that it would seek a superseding indictment. The court granted the continuance, moving the trial to January 31, 2022. The court found that the ends of justice were served by allowing the government time to seek a superseding indictment and prepare supplemental discovery.

After the continuance was granted, Ogiekpolor made several new filings, including (1) an objection to the government's request for the continuance, (2) a motion to reconsider the court's denial of his motion to dismiss the information, (3) a motion to dismiss the indictment on statutory and constitutional speedy trial grounds, and (4) an objection to any further continuances. Responding to the motions, the government explained that it had not yet filed a superseding indictment because "Ogiekpolor's pending motions/objections relate to the resolution of his original motion to dismiss or attendant speedy trial issues." Doc. 49 at 5–7.

On January 11, 2022, the government sought a second continuance, indicating that the earliest possible trial date was April 26, 2022. It cited several reasons for the continuance, including Ogiekpolor's pending motions, the need to obtain a superseding indictment, and the complexity of the case. Ogiekpolor again objected.

The district court held a hearing on the government's continuance request and the pending motions. The court granted the continuance at the hearing. In an order entered after the hearing, the district court made an ends-of-justice finding to exclude the time from January 31 through May 17, 2022 for speedy trial purposes. The court set a trial date for May 17, 2022.

On February 15, 2022, the grand jury returned a superseding indictment charging Ogiekpolor with one count of money laundering conspiracy, in violation of 18 U.S.C. § 1956(h) and 16 substantive counts of money laundering, in violation of 18 U.S.C. § 1957. The superseding indictment differed in material respects from the complaint, information, and initial indictment. Among other things, it alleged that the conspiracy began on an earlier date (February 2019) than had been alleged in the initial complaint, information, and indictment (October 2019). The superseding indictment also identified six additional sham companies Ogiekpolor and co-conspirators working at his direction registered in Georgia. Based on the new charges in the superseding indictment, he faced a new statutory penalty of ten years imprisonment per charge instead of five years total. *Compare* 18 U.S.C. § 1957(b)(1), *with* 18 U.S.C. § 371.

Before the scheduled trial date, Ogiekpolor moved to dismiss the superseding indictment, citing due process, constitutional speedy trial, Speedy Trial Act, and criminal procedure violations. The court denied the motion to dismiss.

Ogiekpolor's trial began on May 17, 2022. At the start of the trial, the government moved to dismiss one of the money laundering counts, and the district court granted that motion. The parties introduced hundreds of exhibits and called dozens of witnesses during the eight-day trial. The jury convicted him on all counts. The district court sentenced him to a total of 25 years' imprisonment.

## II.    STANDARD OF REVIEW

Whether a defendant's Sixth Amendment right to a speedy trial has been violated is a mixed question of law and fact. *United States v. Villarreal*, 613 F.3d 1344, 1349 (11th Cir. 2010). We review the district court's legal conclusions *de novo* and its factual findings for clear error. *Id.*

We likewise review *de novo* the district court's denial of a motion to dismiss based on a violation of the Speedy Trial Act and for clear error its factual determinations as to excludable time. *United States v. Dunn*, 83 F.4th 1305, 1314 (11th Cir. 2023). A district court's grant or denial of an ends-of-justice continuance under the Speedy Trial Act is reviewed for an abuse of discretion. *Id.*

We liberally construe *pro se* filings. *See Roy v. Ivy*, 53 F.4th 1338, 1346 (11th Cir. 2022). "*Pro se* litigants, however, are required to conform to procedural rules." *Id.*[2]

### III.    DISCUSSION

On appeal, Ogiekpolor argues that his constitutional and statutory rights were violated because of delays in his criminal case. We first address Ogiekpolor's constitutional issue and then turn to his statutory challenges.

### A.    The Delayed Trial Date Did Not Violate the Sixth Amendment.

The Sixth Amendment to the Constitution guarantees a defendant "the right to a speedy and public trial." U.S. Const. amend. VI. If a trial is unreasonably delayed, "a court must set aside any judgment of conviction, vacate any sentence imposed, and dismiss the indictment." *Villarreal*, 613 F.3d at 1349. To determine whether a defendant has been deprived of his constitutional right to a speedy trial, courts weigh four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). "In this circuit, a defendant generally must show actual prejudice unless the first three factors in *Barker* all weigh heavily against the government." *United States v. Davenport*, 935 F.2d 1223, 1239 (11th Cir. 1991).

---

[2] Ogiekpolor represented himself at times during the district court proceedings. He is represented by counsel on appeal.

Ogiekpolor asserts that he was denied the right to a speedy trial under the Sixth Amendment because of the delay between his arrest and trial. The district court rejected his constitutional speedy trial challenge because the first three *Barker* factors did not all weigh heavily in favor of dismissal and he did not show actual prejudice. We conclude that the district court did not err in weighing the factors and denying Ogiekpolor's motion to dismiss the superseding indictment on constitutional speedy trial grounds.

1.    *Length of Delay*

We begin by considering the first factor, the length of the delay. As we have explained, this factor "serves a triggering function: it must first be satisfied for the court to analyze the other factors." *United States v. Oliva*, 909 F.3d 1292, 1298 (11th Cir. 2018) (citing *Villarreal*, 613 F.3d at 1350). A delay exceeding one year is "presumptively prejudicial." *United States v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006) (quoting *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)).

Here, the government concedes that the delay in bringing Ogiekpolor to trial exceeded one year, as the district court found. Because the delay exceeded one year,[3] the triggering factor is

---

[3] Ogiekpolor argues that the relevant period for analyzing his Sixth Amendment challenge is between his arrest and the criminal complaint's filing in August 2020 and his trial in May 2022, a total of 21 months. The government maintained, and the district court agreed, that the delay is calculated post-indictment. The district court calculated the delay as approximately 16 months—from January 13, 2021 (first indictment) to May 17, 2022 (trial).

satisfied, and we proceed to the remaining *Barker* factors. *See Ingram*, 446 F.3d at 1336–37.

We have explained that even when the length of delay is presumptively prejudicial, it does not weigh heavily against the government unless the second factor, the reason for the delay, also weighs against the government. *See, e.g., United States v. Vargas*, 97 F.4th 1277, 1290 (11th Cir. 2024) ("[I]t is particularly necessary to examine the length of the delay alongside the reasons behind it because there were different forces at work for different parts of the delay."); *United States v. Stapleton*, 39 F.4th 1320, 1327 (11th Cir. 2022) ("[T]he length of delay doesn't weigh *heavily* against the Government unless the *reason* for the delay also weighs against the Government." (emphasis in original)), *cert. denied*, 143 S. Ct. 2693 (2023). We turn to factor two.

### 2.    Reason for Delay

"The government bears the burden of establishing valid reasons for the delay." *Villarreal*, 613 F.3d at 1351. When evaluating the government's reasons, we allocate different weight to different reasons for delay:

> (1) a deliberate attempt to delay the trial in order to hamper the defense is weighted heavily against the government; (2) a more neutral reason such as negligence or overcrowded courts is weighted less heavily against the government but nevertheless is

---

Because the trial delay exceeded one year either way, we need not decide which calculation is correct.

considered since the ultimate responsibility for such circumstances must rest with the government rather than the defendant; and (3) a valid reason, such as a missing witness, serves to justify appropriate delay.

*Id.* (alterations adopted) (internal quotation marks omitted).

The record supports the district court's finding that the reason for the delay does not weigh against the government. The district court considered Ogiekpolor's requests for extensions and pretrial motions. The court recounted that after the government issued the first indictment in January 2021, Ogiekpolor filed two unopposed motions to extend the time for pretrial filings and continue a scheduled pretrial conference. According to the court, "[t]hese two motions had the cumulative effect of extending the filing date for pretrial motions from March 1, 2021, to April 19, 2021." Doc. 88 at 5. Then, "between April 19, 2021, and August 17, 2021, the parties litigated [Ogiekpolor's] initial motion to dismiss . . . which included [his] requesting two extensions of time to file responses." *Id.*

After the district court denied the motion to dismiss in November 2021, Ogiekpolor filed additional motions that the district court said "required additional delay" to address. *Id.* at 5–6. The court also observed that "the COVID-19 pandemic prevented any trials from being conducted in the Northern District of Georgia during part of" the relevant period, and "it was unlikely that [Ogiekpolor's] trial could have commenced sooner." *Id.* at 5 n.1. Thus, the district court found that the "delay [was] not attributable

14                    Opinion of the Court                    22-13428

to any negligence, dilatory conduct, or inaction on the part of the government." *Id.* at 6.

The district court's factual findings are not clearly erroneous. Given these findings, the court did not err in concluding that "the second *Barker* factor does not weigh against the government." *See id.* When "there is no indication that the prosecution was any more responsible than the defense for the delay," and "matters outside the control of the parties [contribute to] the delay," the second *Barker* factor does not weigh against the government. *United States v. Dunn*, 345 F.3d 1285, 1296 (11th Cir. 2003); *accord United States v. Register*, 182 F.3d 820, 827 (11th Cir. 1999) (recognizing that when the defendant and "the government [both] bear some responsibility for putting off the trial," then the second *Barker* factor does not weigh in the defendant's favor). Moreover, where the litigation of pretrial motions and requests for continuances initiated by the defendant contribute to the delay, we cannot say that the reason for the delay weighs against the government. *Register*, 182 F.3d at 827.

Because the second *Barker* factor does not weigh against the government, the first *Barker* factor, the length of the delay, does not weigh heavily against the government. *See Vargas*, 97 F.4th at 1294. Next, factor three.

### 3.    *Assertion of Speedy Trial Right*

For the third factor, we ask whether Ogiekpolor affirmatively asserted his Sixth Amendment speedy trial right. The government agrees with him (and conceded below) that he did. The government did not concede that this factor weighs heavily against

it, however. We agree with the district court that this factor does not weigh heavily against the government.

Under our precedent, whether a defendant's assertion of his speedy trial right weighs heavily against the government depends on the facts relevant to *Barker* factor two. *Compare Ingram*, 446 F.3d at 1335, 1338–40 (holding that the third factor weighed heavily against the government where the government was responsible for the delay and the defendant had asserted his right to a speedy trial soon after learning of the indictment and arrest warrant), *with Register*, 182 F.3d at 828 (concluding that the third *Barker* factor did not weigh heavily against the government where the defendant had asserted his right to a speedy trial but also moved for four continuances before trial). The district court concluded that *Register* was more applicable to this case than *Ingram* because Ogiekpolor was largely responsible for the delay in proceedings. Because the district court did not clearly err in finding that he caused a substantial part of the delay, we agree with the district court that this factor does not weigh heavily against the government.

Having concluded that the first three factors do not weigh heavily against the government, we move to factor four.

### 4.    *Actual Prejudice*

The fourth factor we examine is whether Ogiekpolor suffered actual prejudice from the delay. "To show actual prejudice, [he] must show (1) oppressive pretrial incarceration, (2) his own anxiety and concern, or (3) the possibility that his defense was

impaired because of the delay." *United States v. Machado*, 886 F.3d 1070, 1081–82 (11th Cir. 2018).

On appeal, Ogiekpolor asserts three reasons why he suffered actual prejudice: (1) he "was subjected to oppressive pretrial incarceration for 21 months before his case came to trial"; (2) he "suffered anxiety and concern based on his displeasure with prior counsel for failing to make the government try him in a timely fashion and his multiple motions to dismiss and objections to requests for continuance that were made by the Government"; and (3) his defense was impaired because "the continued delay provided the government the time that [it] needed to file a superseding indictment, which increased [his] incarceration exposure from a maximum of five (5) years to a maximum of one-hundred and fifty (150) years." Appellant's Br. 25.[4]

We begin with his third reason, that his defense was impaired by the delay. *See Barker*, 407 U.S. at 532. We start with this one "because the inability of a defendant [to] adequately . . . prepare his case skews the fairness of the entire system." *Id.*

We are unconvinced that Ogiekpolor's description of the way in which his defense was impaired amounts to actual prejudice. First, his enhanced-criminal-exposure point is misplaced. The impairment inquiry does not focus on the result or potential result

---

[4] Although Ogiekpolor argues on appeal that he suffered prejudice, it does not appear that he argued prejudice below. We assume, without deciding, that his prejudice argument is properly before us.

of the proceedings; it focuses instead on the likelihood that the defendant's ability to mount a defense to the charges against him will diminish over time due to risks such as "dimming memories and loss of exculpatory evidence." *Doggett*, 505 U.S. at 654. Second, he does not identify any witnesses, evidence, or legal defenses that he was unable to present because of the delay. Nor does he assert that the filing of the superseding indictment allowed the government to bring additional charges that he was unprepared to defend.

Turning back to Ogiekpolor's first reason, we find it lacking because pretrial incarceration alone does not amount to prejudice unless the defendant demonstrates that "the conditions under which he was held or the length of his confinement rendered the delay a constitutional violation." *Dunn*, 345 F.3d at 1297. After his initial arrest, the magistrate judge determined that he should be detained pending trial because he was a flight risk. As a result, he remained in detention for 21 months before trial, a significant amount of time. But he has identified no cases holding that this length of detention alone is unconstitutional. Other circuits have suggested that to show actual prejudice a defendant must demonstrate that the delay in trial resulted in substandard conditions of confinement or other consequences of the detention such as loss of employment, disruption of family life, or excessive mental anguish. *See Hakeem v. Beyer*, 990 F.2d 750, 761–62 (3d Cir. 1993); *see also United States v. Robinson*, 55 F.4th 390, 400 (4th Cir. 2022). Ogiekpolor does not point us to any such evidence.

Lastly, we turn to his second reason, that he suffered prejudice based on his anxiety and concern. "Anxiety and concern of the accused are undoubtedly present to some degree in every case." *Morris v. Wyrick*, 516 F.2d 1387, 1391 (8th Cir. 1975). But "this alone does not demonstrate prejudice." *United States v. McGhee*, 532 F.3d 733, 740 (8th Cir. 2008). The Third Circuit has required a defendant to "produce evidence of psychic injury" to show actual prejudice based on anxiety and concern. *Hakeem*, 990 F.2d at 762. That court has also acknowledged that a showing of disrupted employment could contribute to establishing prejudice. *Kennedy v. Superintendent Dallas SCI*, 50 F.4th 377, 384–85 (3d Cir. 2022) (concluding that the "second category of prejudice militate[d] slightly in favor of" the defendant when he "complain[ed] that the looming indictment interfered with his employment by limiting his opportunities in the Marine Corps and ultimately prevent[ed] him from reenlisting"). But we have not found, and Ogiekpolor does not cite, any case finding displeasure with counsel and length of proceedings sufficient to demonstrate anxiety and concern. Thus, we conclude that he has failed to show actual prejudice based on his second reason.

To sum up Ogiekpolor's Sixth Amendment challenge, because the district court did not clearly err in finding that both he and the government were responsible under *Barker* for the delay in this case, factors one, two, and three do not weigh heavily against the government. Therefore, Ogiekpolor is not excused from showing actual prejudice. And because he has not done so, we agree with the district court that his constitutional speedy trial challenge is meritless.

**B.    There Was No Speedy Trial Act Violation Based on the Delay in Returning the Indictment or Beginning the Trial.**

In addition to the Sixth Amendment's protections, the Speedy Trial Act establishes time limits for a defendant's criminal case. The Act requires the government to file an information or indictment charging a defendant with the commission of a crime within 30 days from the defendant's arrest or receipt of a summons in connection with the charge(s). 18 U.S.C. § 3161(b). The Act also sets a time limit for trial: "In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment." *Id.* § 3161(c)(1).

In computing the 30- and 70-day time limits, the Speedy Trial Act directs that certain periods are not counted. *Id.* § 3161(h). The Act lists circumstances when time is excluded. One circumstance relevant here is when a district court orders a continuance based on a finding that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.* § 3161(h)(7)(A).

When deciding whether to grant a continuance based on the ends of justice, the court must consider the following factors: (i) whether the failure to grant the continuance "would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice"; (ii) whether the case is so complex "that it

is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by" the Speedy Trial Act; (iii) whether, "in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment" within the Speedy Trial Act's 30-day time limit; and (iv) whether the denial of a continuance "would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." *Id.* § 3161(h)(7)(B)(i)–(iv). The district court must set out, orally or in writing, "its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." *Id.* § 3161(h)(7)(A).

The Speedy Trial Act addresses what happens when the 30-day time limit for filing an indictment or information after an arrest or the 70-day time limit for trial after indictment or information is not met. If the government exceeds the 30-day time limit to file an indictment or information, the Act directs that any charge against the defendant "shall be dismiss[ed] or otherwise dropped." *Id.* § 3162(a)(1). If the 70-day time limit for holding the trial is not met, the defendant is entitled to dismissal of the indictment or information upon his motion. *Id.* § 3162(a)(2).

Ogiekpolor argues that two distinct Speedy Trial Act violations occurred based on the delay in (1) the government securing an indictment and (2) the district court starting his trial. We reject both.

### 1.    *Ogiekpolor Waived Any Speedy Trial Act Violation Based on the Government's Delay in Securing an Indictment.*

Regarding the first Speedy Trial Act challenge, Ogiekpolor argues that the government failed to comply with the Act's speedy indictment provision. The government responds that we should not reach the merits of this issue because Ogiekpolor waived any challenge under the Speedy Trial Act to the presentment of the indictment.

Determining whether Ogiekpolor waived his speedy indictment challenge involves two inquiries: First, whether the Speedy Trial Act's waiver clause applies to a speedy indictment challenge, and second, whether Ogiekpolor sufficiently raised a speedy indictment issue as to the superseding indictment. After considering both questions, we conclude that he waived any speedy indictment challenge.

As we noted above, § 3162(a) provides sanctions for failing to adhere to its prescribed time limits. Subsection (a)(1) mandates dismissal of any charge not filed in an indictment or information within 30 days from a defendant's arrest or service of a summons. Subsection (a)(2) requires dismissal of the indictment or information upon the defendant's motion if the defendant is not brought to trial within 70 days. This subsection concludes: "Failure

of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under *this section*." 18 U.S.C. § 3162(a)(2) (emphasis added).

Ogiekpolor's speedy indictment issue turns on the meaning of "this section." He contends that because this waiver language appears in § 3162(a)(2), it applies only to dismissals based on failure to timely bring a case to trial. The government contends that "this section" refers to § 3162, which governs both the speedy trial right and the speedy indictment right. We agree with the government.

"Congress ordinarily adheres to a hierarchical scheme in subdividing statutory sections." *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60 (2004). When Congress drafts new legislation, it divides that legislation into sections, subsections, paragraphs, subparagraphs, clauses, subclauses, and items. *See id.* at 60–61. Congress refers to each level of that hierarchy by a unique word. *See* House Legislative Counsel's Manual on Drafting Style, HLC No. 117-2, 15–16 (2022); Senate Office of the Legislative Counsel, Legislative Drafting Manual 10 (1997).[5] "[A] section is a unit below the subpart but above the subsection." *Section*, Black's Law Dictionary (12th ed. 2024). Generally speaking, a subsection starts with "(a),"

---

[5] Although Congress enacted the Speedy Trial Act before the congressional drafting manuals were published, Pub. L. No. 93-619, 88 Stat. 2076 (1975) (codified as amended at 18 U.S.C. §§ 3161–3174), the Supreme Court has explained that these manuals are consistent with earlier guides. *See Koons Buick Pontiac GMC, Inc.*, 543 U.S. at 61 n.4 (citing "standard interpretive guides" dating as early as 1961).

whereas a paragraph starts with "(1)," a subparagraph begins with "(A)," and a clause commences with "(i)." *Koons Buick Pontiac GMC, Inc.*, 543 U.S. at 60–61.

By its plain language, the waiver clause of § 3162(a)(2)—a subsection—applies to "this section." Thus, following the Code's hierarchical scheme, the waiver language refers to § 3162, in which both the speedy indictment right and the speedy trial right appear. If Congress intended to limit the waiver provision to dismissals for untimely trials, we would expect the statute to have used the phrase "under this paragraph" or "under this subsection." Our conclusion is bolstered by the fact that Congress used this customary language elsewhere in the Speedy Trial Act. *See, e.g.*, 18 U.S.C. § 3161(d)(2) ("The sanctions of *section* 3162 apply to this *subsection*." (emphasis added)); *Id.* § 3161(h)(3)(B) ("For purposes of *subparagraph* (A) of this *paragraph . . . .*" (emphasis added)); *Id.* § 3161(h)(7)(B)(iv) (specifying "*clause* (ii)" (emphasis added)).

We therefore join the numerous other circuits that have interpreted the plain language of § 3162(a)(2) to mean that a defendant waives a speedy indictment challenge if he does not move in the district court for dismissal on Speedy Trial Act grounds before trial. *See, e.g.*, *United States v. Satterwhite*, 893 F.3d 352, 355–59 (6th Cir. 2018); *United States v. Cherry*, 720 F.3d 161, 165–66 (4th Cir. 2013); *United States v. Hines*, 694 F.3d 112, 117–20 (D.C. Cir. 2012); *United States v. Spagnuolo*, 469 F.3d 39, 42–46 (1st Cir. 2006); *United States v. Gamboa*, 439 F.3d 796, 803–04 (8th Cir. 2006); *United States*

*v. Lewis*, 980 F.2d 555, 560 (9th Cir. 1992), *abrogated on other grounds by Bloate v. United States*, 559 U.S. 196 (2010).

Having concluded that a speedy indictment issue is waived if not timely raised, we turn to whether Ogiekpolor made a timely challenge. Ogiekpolor argues that he adequately raised a speedy indictment challenge in his *pro se* motion to dismiss filed a few weeks before trial. He asserts that his motion to dismiss the superseding indictment sufficed to raise the issue because the motion "set forth the facts that constitute the violation of 18 U.S.C. § 3161(b)." Reply Br. 5. Those facts, he says, include his acknowledgement that the superseding indictment charged a crime based on the same conduct as the initial complaint in the case, which was filed in August 2020 and triggered the speedy trial clock. He adds that he referenced the Speedy Trial Act, "18 U.S.C. § 3161 *et seq.*," in his motion to dismiss. He asserts that his failure to identify the specific speedy indictment provision in § 3161(b) should not be fatal to preserving his challenge. But after carefully reviewing the motion to dismiss— even liberally construing this *pro se* filing—we disagree.

Ogiekpolor's motion to dismiss reveals that the "facts" he now identifies as supporting a speedy indictment issue were presented in support of his Fifth Amendment due process challenge. There, he asserted that "pre-indictment delay . . . [was] the product of a deliberative act by the government designed to gain a tactical advantage," which caused him substantial prejudice. Doc. 76 at 1–2. In context, he argued that the superseding indictment's belated

addition of more charges based on the same offense conduct was evidence of the government's unfair tactics.

What is more, a review of Ogiekpolor's motion reveals that his failure to cite 18 U.S.C. § 3161(b) was a knowing omission. He cited specific provisions of the Speedy Trial Act in relation to other issues. For example, he unambiguously asserted a 70-day appearance-to-trial violation pursuant to 18 U.S.C. § 3161(c)(1) (the correct provision). He argued that the elapsed days between his February 24 appearance on the superseding indictment and his scheduled trial date of May 17 violated the Speedy Trial Act. And he asserted a 90-day detention-to-trial violation pursuant to 18 U.S.C. § 3164(b) (also the correct provision), arguing that the government's failure to bring him to trial within 90 days of his arrest on August 20, 2020 violated the Speedy Trial Act. Ogiekpolor's assertions of these specific violations with reference to the specific statutory provisions belies his position that a more-than-30-day speedy indictment violation is hidden in his motion.

Ogiekpolor does not contend that he raised a speedy indictment violation other than in his motion to dismiss. Thus, under § 3162(a)(2), he waived it, and we cannot consider it on appeal.

> 2.   *There Was No Speedy Trial Act Violation Based on the Delay in Beginning the Trial.*

We now turn to Ogiekpolor's Speedy Trial Act challenge based on the delay between his indictment and trial. As we explained above, the Speedy Trial Act generally imposes a requirement that a trial begin "within seventy days from the filing date

(and making public) of the information or indictment." 18 U.S.C. § 3161(c)(1); *see Davenport*, 935 F.2d at 1229 ("Computation of the [70]-day limit under the Speedy Trial Act generally begins when the defendant is indicted or when the defendant first appears before the court . . . ."). But the Speedy Trial Act "permits a district court to grant a continuance and to exclude the resulting delay if the court, after considering certain factors, makes on-the-record findings that the ends of justice served by granting the continuance outweigh the public's and defendant's interests in a speedy trial." *Dunn*, 83 F.4th at 1314 (quoting *Zedner v. United States*, 547 U.S. 489, 498–99 (2006)); *accord* 18 U.S.C. § 3161(h)(7)(A).

Ogiekpolor argues that the Speedy Trial Act was violated because there were more than 70 days of non-excludable time between his indictment and trial. As an initial matter, both Ogiekpolor and the government agree that the 57 days from September 16 through November 12, 2021 were non-excludable.[6] At that point, 13 days remained on the speedy trial clock.

---

[6] This period represents the time from when the district court had all the necessary information to rule on Ogiekpolor's motion to dismiss the charges against him on speedy trial grounds through the district court's denial of the motion. *See Davenport*, 935 F.2d at 1228 ("For pretrial motions that do not require hearings, § 3161(H)(1)(F) excludes the time required for 'prompt disposition' of the motion. . . . If the court has all the information necessary to rule on the motion at the time the motion is filed, the court immediately has the motion under advisement under § 3161(h)(1)(J) and thirty days may be excluded from the speedy trial clock due to the motion.").

The district court found that periods of delay from November 13, 2021 through the trial date were in the interests of justice and therefore excluded under the Speedy Trial Act. Ogiekpolor argues that the speedy trial clock continued to run after November 12 because this period of delay was "due solely to the Government's lack of diligent preparation." Appellant's Br. 30. In effect, he challenges the district court's determination that this period should be excluded from the speedy trial clock based on the "ends of justice." *See* 18 U.S.C. § 3161(h)(7)(A).

We begin by explaining why the district court did not clearly err in finding that the period from November 13, 2021 through January 11, 2022 was excludable. Notably, on November 13, 2021, the government filed a motion to continue the trial, which the district court granted. In that motion, the government recounted that the district court informed the parties on November 9, 2021 that the new trial date would be November 30, three weeks away. The government anticipated that it needed several weeks to provide discovery, file a superseding indictment, and prepare for trial.

The district court granted the motion and found that the ends of justice would be served by granting a continuance. In its order, the district court recited the government's reasons for requesting the continuance and found that a denial of the request would result in a "miscarriage of justice." Doc. 41 at 2–3 (citing 18 U.S.C. § 3167(h)(7)(B)). After considering the government's need for additional time to seek a superseding indictment, prepare supplemental discovery, and secure witnesses, the court found that "[a]

sixty day continuance of the trial date [was] appropriate to allow both parties adequate time to prepare for trial." *Id.* at 3. In deciding whether to grant an ends-of-justice continuance, a district court must consider "a multiplicity of factors, i.e., adequate time for defense counsel [and the government] to prepare, number of [witnesses], pending motions, anticipated trial time, . . . conflicts in schedules of judges and trial counsel, etc." *United States v. Henry*, 698 F.2d 1172, 1174 (11th Cir. 1983). Here, the district court did just that. Given the "broad discretion" a district court has when "attempting to comply with the mandates of the Speedy Trial Act and the exclusions thereto," the district court did not abuse that discretion in granting the government's motion to continue trial. *Id.* And because none of the district court's underlying findings was clearly erroneous, the court did not err in finding that the period between November 13, 2021 and January 11, 2022 was excludable time under § 3161(h)(7)(A)–(B). *See id.*

We now turn to whether the district court clearly erred in finding that the period from January 11, 2022 through the start of the trial on May 17, 2022 was properly treated as excludable time. On January 11, 2022, the government filed another motion to continue trial, this time until April 26, 2022. The government explained that Ogiekpolor had filed several pretrial motions that were still pending before the district court and required the government to respond. Also, standby counsel would not be available for many dates between February and July. Standby counsel's presence was mandatory because the district court previously conditioned its permission for Ogiekpolor to represent himself on having standby

counsel to aid him during trial. Moreover, the government had yet to seek a superseding indictment, the case was complex, supplemental discovery was required, and both parties needed additional time to prepare for trial.

The district court again found that the ends of justice were served by granting a continuance. After reviewing the government's motion, the court found that denying a continuance would result in a "miscarriage of justice" and "deny the parties the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." Doc. 55 at 1 (citing 18 U.S.C. § 3161(h)(7)(A), (B)(i), (iv)). The district court did not abuse its discretion in granting the continuance, and again we cannot say that the district court clearly erred in finding that the continuance served the ends of justice. *Cf. Henry*, 698 F.2d at 1174.

Because the district court's reasons for granting the two challenged continuances fell within the bounds of its considerable discretion, the district court did not abuse its discretion in granting the government's motion to continue trial, nor did it err in rejecting Ogiekpolor's Speedy Trial Act challenge.

## IV.   CONCLUSION

For the above reasons, we reject Ogiekpolor's challenges on appeal and thus affirm the district court.

**AFFIRMED.**